THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JULIUS KESSLER, Plaintiff in Error.

*Opinion filed December 23, 1926—Rehearing denied Feb. 3, 1927.*

CRIMINAL LAW—*what is improper question to ask a character witness—reversal.* A character witness for the defendant should not be asked by the court whether he had testified as to the character of the defendant in another case, as the court has no right to bring out the fact that the defendant had been on trial in another case, but where the identification of the defendant is positive and the record is such that the jury could have found no other verdict than guilty the error of the court will not require a reversal.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

ROBERT W. DANIELS, (DANIELS, BODDIE, TONE & CHALLENGER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and VIRGIL L. BLANDING, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of the crime of assault with intent to commit robbery. He brings the cause here by writ of error and argues two assignments of error: First, that the trial court erred in questioning a certain character witness; and second, that plaintiff in error was not proven guilty beyond a reasonable doubt.

The complaining witness, Josephine Ruley, testified that about eight o'clock on the evening of December 13, 1925, she left her place of employment as a waitress in the city of Chicago and started for her home, on Sixty-seventh street;

that as she went into the vestibule of the building in which she lived plaintiff in error came in behind her, pushed her into a corner of the vestibule with one hand while he held a gun in the other hand, and demanded her money. Upon receiving the reply that she had no money he ordered her to open her pocket-book, which she did, and that after he searched her he compelled her to kiss him and then left, without, however, securing a small sum of money which she had in a pocket of her coat. She testified that the vestibule was lighted by an electric ceiling light and that she could see plaintiff in error plainly; that about one o'clock the next morning he was brought to her home by several police officers and she identified him as her assailant, but that he denied ever having seen her.

Louis B. Umstot testified that on the evening of December 13, 1925, he was standing on the street at the corner of Sixty-seventh street and Stony Island avenue and saw plaintiff in error walking up and down in front of the store there; that a woman came along and he followed her, returning in a few minutes; that as the witness was watching plaintiff in error the complaining witness, Josephine Ruley, came along; that plaintiff in error followed her down the street; that the witness followed about ten feet behind plaintiff in error until Josephine Ruley turned into the court of the apartment building in which she lived; that plaintiff in error followed her into the court and into the vestibule of the building; that the witness saw plaintiff in error holding the complaining witness in a corner of the vestibule with a bright object in his hand, which the witness took to be a gun; that plaintiff in error came out in a few minutes and passed by the witness and disappeared around the corner; that the witness notified police officers in that neighborhood; that later, between 1:00 and 1:30 A. M., he saw plaintiff in error and called police officer Coyle, who made the arrest. This witness identified plaintiff in error as the one who attacked Josephine Ruley.

Officer Edward D. Coyle testified to the arrest of plaintiff in error and that when arrested he had in his possession a 38-calibre revolver and a flashlight. Officers James E. Harris and Joseph B. Hennessy testified to the identification of plaintiff in error by Josephine Ruley and that plaintiff in error denied the offense.

Plaintiff in error took the stand and testified that on that evening he left his home on 105th street at seven o'clock and went to Sixty-third street and in that neighborhood visited a show given by a newspaper for a Christmas fund; that the gun taken from him was in his overcoat pocket, wrapped in four or five handkerchiefs; that he had the gun for protection because one of his tenants had been held up, and that he had a flashlight because he needed it in his work and in tending to the fire in the basement of his flat-building. He testified that he remained at the Christmas entertainment until after midnight, and upon leaving there he went to Sixty-third street, where he waited a while for a car east, then walked on Sixty-third street to Stony Island avenue, and then to Sixty-seventh street and Stony Island avenue, where he was waiting for a car when placed under arrest.

The above testimony, together with that of two witnesses as to plaintiff in error's previous good character, was all the evidence in the case.

The assignment of error principally argued is based on certain questions put by the court to William Raddatz, a character witness for plaintiff in error. The court asked the witness whether or not he had had occasion to testify to the character of plaintiff in error as a law-abiding citizen in any other case. Objections were made to this question but the court ruled that the witness should answer, to which the witness replied that he had so testified. The court then asked, "What sort of a case?" Objection was again offered and overruled, and the witness replied, "The case was yesterday, your honor." The court then said, "That is all; a

different case from this?" An objection was again offered and overruled, and the witness replied, "The case that was on trial yesterday." This was clearly error. The court had no right to infer, much less to bring out directly, that plaintiff in error had been on trial in another case, and were this case in any way close on the facts we would be constrained to reverse the judgment, but there is the positive identification of two of the State's witnesses, disputed only by the testimony of plaintiff in error accounting for his whereabouts on that night and giving his reason for being in the neighborhood of the scene of the crime. It seems quite evident from the record that the jury could not have come to a different verdict even though this error of the court had not been committed. For this reason it cannot be said that the error was reversible in this case.

The judgment will be affirmed. *Judgment affirmed.*